## AFFIDAVIT OF SEAN W. RICHARDS

I, Sean W. Richards, being duly sworn, depose and state as follows:

## INTRODUCTION

1.      I am an Essex County Deputy Sheriff currently assigned to the Federal Bureau of Investigation ("FBI") North Shore Gang Task Force. I have been a Deputy Sheriff since 1998. During my career, I have been assigned to numerous state and federal tasks forces with the FBI, Drug Enforcement Administration ("DEA"), Bureau of Alcohol, Tobacco, Firearms, and Explosives, and the Essex County District Attorney's Office investigating drug, violent, and firearm offenses. I have received specialized training in the investigation of controlled substances while attending the Massachusetts Criminal Justice Training Council police academy at West Boylston, graduating as a certified full-time police officer in December 2001. I have attended and successfully completed a two-week basic narcotics investigators course and the advanced investigators course offered by the DEA. During my career, I have personally arrested or have been involved in the arrest of over one thousand individuals for narcotic related offenses.

2.      While assigned to the various task forces during my career, I have conducted investigations involving, but not limited to, the use and distribution of narcotics, assaults, firearms violations, and crimes against persons and have successfully investigated many violations of Title 21 of the United States Code. My duties on the various task forces included working in an undercover capacity and arranging transactions with known narcotics dealers, as well as conducting controlled purchases of narcotics. During my assignments, I have made approximately 50 undercover purchases of narcotics. I have become familiar with, and have utilized, many of the so-called "normal investigative procedures" used by law enforcement officers to identify, apprehend and successfully prosecute individuals involved in the distribution of controlled

substances. These normal investigative procedures include, but are not limited to: physical surveillance, telephone toll analysis, public records analysis, registry records analysis, and interviews, gathering information from informants, controlled purchases of drugs, utilizing undercover officers to purchase drugs, trash analysis, and applying for and executing search warrants. On the basis of my training and experience, I have become familiar with the vernacular of illegal narcotics abusers and distributors. I am acquainted with the methods by which such persons seek to disguise their identities as well as the subject of their conversations and operations, and I am familiar with many of the methods, practices and techniques by which members of organized conspiracies illicitly transport and distribute controlled substances.

## PURPOSE OF AFFIDAVIT

3.      I am submitting this affidavit in support of an application for a criminal complaint charging Manuel Santana Vizcaino, a/k/a "Dave" ("M. SANTANA") and Santo Santana Vizcaino ("S. SANTANA") with conspiracy to distribute and possess with intent to distribute 40 grams or more of fentanyl, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B)(vi),.

4.      As will be explained more fully below, on September 3, 2020 and September 14, 2020, the FBI utilized a confidential informant ("CI") to conduct controlled purchases of fentanyl after contacting M. SANTANA. On September 14, 2020, S. SANTANA delivered fentanyl to the CI.

5.      I personally have participated in this investigation since at least September 2020. I am familiar with the facts and circumstances of this investigation based upon, among other things: (a) my personal knowledge and involvement in this investigation; (b) my review of records related

to this investigation; (c) information provided to me orally and in writing by other law enforcement agents; and (d) my experience and training as a criminal investigator.

6. Because this affidavit is submitted for the limited purpose of establishing probable cause to believe that M. SANTANA and S. SANTANA conspired to distribute and possess with the intent to distribute fentanyl, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B)(vi), I have not included every detail known to me. Rather, I have included only those facts that I believe are sufficient to establish probable cause for the issuance of the requested criminal complaint. All times herein are approximate.

## PROBABLE CAUSE

September 3, 2020: Controlled purchase of 276 grams of fentanyl after contacting M. SANTANA

7. On September 3, 2020, FBI investigators utilized the CI to conduct a controlled purchase of fentanyl from a Lawrence-based fentanyl distributor known to the CI as "Dave." As detailed below, "Dave" was later identified as M. SANTANA. The CI has a criminal history that includes convictions for drug possession and distribution offenses. The CI is cooperating with law enforcement for consideration in pending criminal case. Based on the corroboration detailed below, I believe that the information received from the CI is reliable. At the time of writing this affidavit, the CI is willing to testify. Prior to the controlled purchase, the CI and the CI's vehicle were searched for contraband with negative results.

8. At the direction and under the supervision of investigators, the CI arranged by text message to purchase fentanyl from M. SANTANA. The text messages between the CI and M. SANTANA are in English and are preserved. At 4:27 p.m., the CI sent a text message to M. SANTANA, using telephone number (978) 242-5981, stating that he was 20 minutes away,

meaning 20 minutes away from 18 Swan Street in Lawrence. The CI has purchased drugs from M. SANTANA regularly in the past and was stopped by police in possession of approximately 270 grams of suspected fentanyl purchased from M. SANTANA prior to the CI's cooperation. The CI informed investigators that the CI regularly acquired between 250-290 grams of fentanyl from M. SANTANA on a weekly basis for approximately the prior two months.

9. After the text message to M. SANTANA, investigators provided the CI with $7,500 of official agency funds for the controlled purchase of fentanyl. Investigators also equipped the CI with an audio and video recording and surveillance device. Investigators then followed the CI to 18 Swan Street and surveilled him walk up the stairs at the rear of the building, which led to the second floor apartment. Outside the second floor apartment, M. SANTANA greeted the CI. Prior to entering the apartment, M. SANTANA grabbed a guava juice box from the trash and brought it into the kitchen. Inside the kitchen, the CI handed M. SANTANA the $7,500 of official agency funds. M. SANTANA took the money, but did not count it. M. SANTANA then walked into a back bedroom. M. SANTANA returned and provided the guava juice box to the CI and told the CI that he put an extra "one and a half" inside the box. This meeting was audio- and video-recorded. During the meeting, a surveillance officer observed M. SANTANA outside the residence and observed him walk inside the second floor apartment. M. SANTANA was identified wearing the same clothing as seen in the recording of the meeting. Based on my training and experience, I believe that M. SANTANA placed an extra one and a half "fingers," meaning an extra 15 grams of fentanyl into the box for the CI. The CI then left the apartment and met with investigators.

10. The CI provided investigators with the guava juice box, which contained 26 and one half compressed cylinders of a brown powdery substance wrapped in wax paper. Investigators then searched the CI for contraband and money with negative results and retrieved the audio- and

video-equipment. The substance was tested at the DEA Laboratory and confirmed to be 276.3 grams of a substance containing fentanyl.

September 14, 2020: Controlled purchase of 257 grams of fentanyl from S. SANTANA after contacting M. SANTANA.

11. On September 14, 2020, FBI investigators utilized the CI to conduct a controlled purchase of fentanyl from M. SANTANA. At the direction and under the supervision of investigators, the CI arranged by text message to purchase fentanyl from M. SANTANA. The text messages between the CI and M. SANTANA are preserved. Prior to the controlled purchase, the CI and the CI's vehicle was searched for contraband with negative results. At 4:34 p.m., the CI sent a text message to M. SANTANA, using telephone number (978) 242-5981, stating that he was ready, meaning ready to meet at 18 Swan Street in Lawrence. M. SANTANA replied that he needed 15 minutes.

12. After the text message exchange, investigators provided the CI with $7,500 of official agency funds for the controlled purchase of fentanyl. Investigators also equipped the CI with an audio- and video-recording and surveillance device. Investigators then followed the CI to 18 Swan Street and surveilled him walk up the stairs at the rear of the building, which led to the second floor apartment. The CI walked into the kitchen. Inside the kitchen, the CI greeted S.SANTANA, M. SANTANA's brother, and handed him the $7,500 of official agency funds. S. SANTANA counted the money at the kitchen table. S. SANTANA stated that "Dave" was in Santo Domingo, the capital of the Dominican Republic, and would return the following week. The CI had never met S. SANTANA prior to this controlled purchase. S. SANTANA then walked out to the rear deck, took a black plastic bag, and handed it to the CI. This meeting was audio- and video-recorded. The CI then left the apartment and met with investigators.

13. The CI provided investigators with the black plastic bag, which contained 26 compressed cylinders of a brown powdery substance wrapped in wax paper. Investigators then searched the CI for contraband and money with negative results and retrieved the audio- and video- equipment. The substance was tested at the DEA Laboratory and confirmed to be 257 grams of a substance containing fentanyl.

14. On the same day, FBI agents conducted a photographic identification procedure with the CI, using an eight-photo array. The photo array was presented in sequential order and the CI identified a photograph of M. SANTANA as the person he knew as "Dave." As stated above, the CI has purchased drugs from "Dave" on numerous occasions. Upon reviewing the travel history of M. SANTANA, investigators corroborated the statement by S. SANTANA that M. SANTANA was in the Dominican Republic on September 14, 2020. Based on social media analysis and the video recording of the controlled purchase on September 14, 2020, investigators identified S. SANTANA as M. SANTANA's brother and the individual who sold fentanyl to the CI that day.

## CONCLUSION

15. Based upon the evidence set forth above, as well as my training and experience, I submit that there is probable cause to believe that beginning no later than September 3, 2020 and until no later than September 14, 2020, M. SANTANA and S. SANTANA conspired to distribute and possess with intent to distribute 40 grams or more of fentanyl, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B)(vi). Accordingly, I respectfully request that a criminal complaint charging M. SANTANA and S. SANTANA with violations of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B)(vi), be issued.

16. Disclosure of the contents of the application, affidavit, and complaint could compromise and jeopardize the ongoing investigation. For that reason, I request that the application, affidavit, and complaint be ordered sealed.

/s/ Sean W. Richards
_____
Sean W. Richards
Task Force Officer
Federal Bureau of Investigation

ATTESTED TO and SWORN to before me telephonically in accordance with the requirements of Fed. R. Crim. P. 4.1 on October 14, 2020.

Marianne B. Bowler, USMJ
HON. MARIANNE B. BOWLER
United States Magistrate Judge

7